UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:15-cv-24224-KMW/Simonton

DEBORA VELASQUEZ,
On behalf of herself and all others
similarly situated,

    Plaintiff,

v.

STANLEY M. GLASER,
d/b/a GLASER ORGANIC FARMS,
d/b/a GLASER FARMS,

    Defendant.
_____/

## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, STANLEY M. GLASER d/b/a GLASER ORGANIC FARMS, d/b/a GLASER FARMS ("Glaser"), by and through his undersigned counsel, BlueRock Legal P.A., hereby files and serves this Motion For Partial Summary Judgment.

## PRELIMINARY STATEMENT

Glaser owns and operates an organic farm and manufactures and sells organic foods. Glaser employs two general classes of workers: (1) farm workers who work in the farming operations; and (2) kitchen employees who process and package organic foods and meals for wholesale and retail sale.

Plaintiff Debora Velasquez ("Plaintiff") was formerly employed in the kitchen. The Amended Complaint contains two counts. Count I alleges that Glaser violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.* (2016), by failing to pay wages due to Plaintiff under the FLSA. Count II alleges that Glaser violated the Migrant and Seasonal Agricultural

Workers Protection Act ("AWPA"), 29 U.S.C. § 1801 *et. seq.* (2016).  Summary judgment should be granted for Glaser on Count II.

The undisputed facts show that Plaintiff has no right to sue under the AWPA because she was not a migrant or seasonal agricultural worker and is not, therefore, covered by the AWPA.  To be a migrant agricultural worker under the AWPA, a worker must be (1) employed in seasonal or temporary agricultural employment, (2) required to be absent overnight from her permanent place of residence.  29 U.S.C. § 1802(8)(A); *Caro-Galvan v. Richardson*, 993 F.2d 1500, 1505 (11th Cir. 1993).  Plaintiff meets none of these criteria.  She admitted at her deposition that she was not employed in a seasonal or temporary capacity.  She was not employed in agricultural employment.  She was not required to be absent overnight from her permanent place of residence.

To the contrary, Plaintiff worked in Glaser's "kitchen" facility manufacturing prepared foods for retail and wholesale sale.  Plaintiff worked for Glaser on a year-round basis.  She lives in Miami-Dade County with her family and commuted to work.  Plaintiff has absolutely none of the indicia of a "seasonal" or "migrant" worker in "agricultural" employment.   The absence of any one of these criteria would have warranted summary judgment.  Plaintiff has none of them.

## STATEMENT OF FACTS

Glaser has filed a Statement of Undisputed Facts accompanying this Motion For Partial Summary Judgment.  Citations to the Statement of Material Facts are in the format "[Facts ¶____]" with the corresponding paragraph number.  The entire factual record submitted in support of this Motion is Plaintiff's own deposition testimony and her own answers to interrogatories.

Plaintiff was formerly employed by Glaser for approximately 12 months, from December, 2013 to December, 2014.  [Facts ¶8]  She worked exclusively in a "kitchen" facility the entire time.  [Facts ¶1]  Plaintiff never worked growing or harvesting crops, such as tilling or digging in soil, during her employment with Glaser.  [Facts ¶ 1]  The kitchen where Plaintiff worked was a retail and wholesale food factory, where Plaintiff and others made a variety of vegetarian foods for retail and wholesale customers, including guacamole from avocados, fruit juices, salads and almond rolls, "ready-to-go" meals and other raw food mixtures.  [Facts ¶2]  Plaintiff also arranged pallets of prepared foods for a weekly farmer's market, cleaned and washed dishes.  [Facts ¶2]  Plaintiff performed a variety of tasks in the kitchen, all of which involved mixing and manufacturing food products.  [Facts ¶3, 5]

Plaintiff lived at her current home with her family while she was employed by Glaser, [Facts ¶¶11, 15].  She has lived at the same address for the past six years  [Facts ¶12]  and she has lived in the same community, "Everglades Community Association," since November, 2007. [Facts ¶14].  She has lived in the United States since 2000.  [Facts ¶¶9–10].  Plaintiff has not had any other residence during that time.  [Facts ¶ 13]

## MEMORANDUM OF LAW

### The Legal Standard Applicable To A Motion For Summary Judgment.

Summary judgment should be granted if there is "no genuine issue of material fact." F.R.C.P. 56(c) (2016).  The moving party may show that there is no genuine issue of material fact by presenting evidence that negates an essential element of the nonmoving party's case, or by demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 329 (1986). The non-

moving party must then provide sufficient evidence showing that she can prevail on the merits. *See Beard v. Banks*, 548 U.S. 521, 530 (2006). "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F.R.C.P. 56(c).

Summary judgment is appropriate for Defendant as to Plaintiff's AWPA claim because Plaintiff has admitted that she is not a "migrant agricultural worker" within the meaning of the AWPA. According to her own deposition testimony, she was not employed in "agriculture," and she was not a "migrant" worker under the AWPA. Defendant should be

## POINT I

**PLAINTIFF WAS NOT A COVERED EMPLOYEE UNDER THE AWPA AND SUMMARY JUDGMENT SHOULD BE GRANTED FOR GLASER AS TO COUNT II OF THE AMENDED COMPLAINT.**

**Procedural background.**

Count II of the Amended Complaint is for relief under the AWPA. The same claim, stated differently, was in the original Complaint [D.E. 1] That claim was the subject of Glaser's Motion to Dismiss Count II [D.E. 10] filed December 22, 2015. Glaser argued that the claim should be dismissed because Plaintiff had not properly alleged coverage under the AWPA. She originally alleged in the Complaint:

- That she was a "kitchen food mixer and food packer to process raw organic food for retail sale"
- That she was employed in a food processing establishment
- That other workers, but not Plaintiff, were employed "to work in the farm's fields"

[D.E. 10 at pg. 1-2]  Glaser cited the statute, regulations and case law in his Motion to Dismiss, showing that Plaintiff was not employed in "agriculture" and that she was not a "migrant agricultural worker" under the AWPA. [D.E. 10 at pp. 2-6]

Plaintiff did not file any substantive response to Glaser's motion.  Instead, she amended her Complaint to attempt to correct those substantive defects.  In the Amended Complaint, she alleged:

- That she was employed "in agricultural employment"
- That her employment was "of a seasonal or other temporary nature"
- That she was "required to be absent overnight from her permanent place of residence in Guatemala."
- That she "handled, packed and packaged raw, unprocessed and unmanufactured organic fruits and vegetables prior to final storage."

[D.E. 11, ¶ 10]

Unfortunately, none of that was true.  Plaintiff has not even visited Guatemala in ten years. [Facts ¶ 10]  She has not had any residence there or anywhere else than her home in Miami-Dade County for the past ten years.  [Facts ¶12, 14]  The allegation that she was "required to be absent overnight from her permanent place of residence in Guatemala is simply false.

Plaintiff testified in her deposition that she was not employed in agriculture, that she was employed making prepared foods for retail sale, that she was employed year-round and not seasonally, and that she was never required to be absent overnight – she had lived in the same house with her family for the prior six years.  She even admitted that she has not been outside of the United States in at least ten years – not to Guatemala or anywhere else.  This case should never have been filed by Plaintiff but, in any event, summary judgement is appropriate now because there is no question that Plaintiff is not covered under the AWPA.

The AWPA protects "migrant agricultural workers." 29 U.S.C. § 1822 (2016). The AWPA has two requirements for a worker to be a "migrant agricultural worker:" (1) employment in seasonal or temporary agricultural employment, and (2) absence overnight from his or her permanent place of residence. 29 U.S.C. § 1802(8)(A) (2016); 29 C.F.R. § 500.20(p) (2016); *Caro-Galvan v. Richardson*, 993 F.2d 1500, 1505 (11th Cir. 1993). The undisputed facts show that Plaintiff is definitively not a "migrant agricultural worker," the AWPA does not cover her employment by Defendant, and summary judgment should be granted to Glaser on Plaintiff's AWPA claim.

1. **Plaintiff was not employed in "agricultural employment" and was not, therefore, a "migrant agricultural worker" under the AWPA.**

The AWPA borrows its definition of "agricultural employment" from other statutes as follows: (1) employment in agriculture under the Fair Labor Standards Act (29 U.S.C. 203(f)), (2) employment in "agricultural labor" under the Internal Revenue Code of 1954 (26 U.S.C. 3121(g)), and (3) "the handling, planting, drying, packing, packaging, processing, freezing, or grading prior to delivery for storage of any agricultural or horticultural commodity in its unmanufactured state." 29 U.S.C. § 1802(3) (2016). Of course, "agriculture" is the "the science or art of the production of plants and animals useful to man and in varying degrees the preparation of the products for man's use and their disposal (as by marketing)." *Morante-Navarro v. T & Y Pine Straw, Inc.*, 350 F.3d 1163, 1167–68 (11th Cir. 2003).

Plaintiff correctly alleged in her Complaint and testified in her deposition that Defendant Glaser Organic Farms had two classes of employees: (1) those who worked in Glaser's farming operations; and (2) those who worked in the kitchen. The fact that Glaser employed some workers in its farming operations does not mean, however, that Plaintiff was herself employed in

agricultural employment. Whether Plaintiff individually was employed in agriculture, under the AWPA, turns on her own individual job duties.

For example, the FLSA definition of "agriculture" (which is borrowed by the AWPA) is "farming in all its branches" and "practices performed by a farmer or on a farm as an incident to or in conjunction with such farming operations." 29 U.S.C. § 203(f). The definition of "agriculture" under the FLSA includes two types of activities: "primary agriculture," which is "farming in all its branches," and "secondary agriculture," which is "practices performed by a farmer or on a farm as an incident to or in conjunction with such farming operations. *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762 (1947); 29 C.F.R. § 780.105 (2016).

### A. Plaintiff Was Not Employed in Primary Agriculture.

Plaintiff was not employed in primary agriculture under the FLSA. "Primary agriculture" includes tilling soil and the cultivating and harvesting of agricultural commodities. *McComb*, 337 U.S. at 762. Plaintiff testified at her deposition that she was *never* involved in tilling soil or growing or harvesting food products. [Pl. Tr., Exh. 1, at pg. 29–30]. Plaintiff's job with Glaser – according to Plaintiff – consisted only of "kitchen work," which included making guacamole from avocados [Exh. 1 at pg. 19-20], making fruit juices for retail sale or for use as ingredients in other dishes made in the kitchen [Exh. 1 at pg. 21–22], making foods to be sent to retailers [Exh. 1, at 20–22], stacking foods for Glaser's weekly farmer's market [Exh. 1 at pg. 24–25, 29, 107, 108], washing dishes [Exh. 1 at pg. 24, 27, 29, 32, 69–71], and making "ready-to-go meals" for retail sale [D.E. 11 at ¶ 10]. There was no time when she was "tilling the soil" or harvesting anything. She worked in a kitchen manufacturing facility.

Plaintiff's job duties were not primary agriculture because activities that do not include work in a crop field work are not primary agriculture. *See Mitchell v. Budd*, 350 U.S. 473, 479–82 (1956) (holding that the bulking of tobacco, which was a processing operation that did not include field work, was not agriculture under the FLSA); *Maneja v. Waialua Agricultural Co.*, 349 U.S. 254, 268–69 (1955) (holding that the milling of sugarcane, which did not involve field work, was not agriculture under the FLSA); *McComb*, 337 U.S. at 762–63 (holding that an irrigation company that supplied water to farms, and was not involved in the field work associated with growing crops, was not engaged in primary agriculture); *Marshall v. Gulf & W. Indus., Inc.*, 552 F.2d 124, 126 (5th Cir. 1977) (stating that "[n]o argument is made that" tomato packers, who did not perform field work, were employed in primary agriculture because it was clear that they were not); *Donovan v. Frezzo Bros., Inc.*, 678 F.2d 1166, 1171 (3d Cir. 1982) (holding that the creation of mushroom compost, which did not involve field work, was not primary agriculture).

There is no issue of fact that Plaintiff was not doing any field work planting or harvesting crops or working the field in any way. From Plaintiff's own description of her job, she was working in a kitchen making food for retail sale. She was not employed in primary agriculture and those job duties are not covered under the AWPA.

    **B.**    <u>**Plaintiff Was Not Employed In Secondary Agriculture**</u>.

Plaintiff was not employed in secondary agriculture under the FLSA. Secondary agriculture is "practices . . . performed by a farmer or on a farm as an incident to or in conjunction with such farming operations . . . ." *McComb*, 337 U.S. at 763. Examples of secondary agriculture include the basic and necessary practices to prepare agricultural commodities for market, such as assembling, ripening, cleaning, grading, sorting, drying, preserving, packing and storing. 29

8

C.F.R. § 780.151(b).  In contrast, manufacturing operations that change the natural or raw state of an agricultural commodity are not "agriculture" at all.  *Maneja*, 349 U.S. at 268–69 (holding that the milling of sugar cane was not secondary agriculture because the milling process changes the natural state of the sugar cane).

Only practices which are subordinate to the farming operation can qualify as secondary agriculture.  29 C.F.R. § 780.145. Secondary agriculture also excludes activities performed on agricultural commodities grown by other farmers because these practices are not performed in conjunction with *such* farming.  *McComb*, 337 U.S. at 766, n. 15; *Marshall v. Gulf & W. Indus.*, 552 F.2d 124, 126 (5th Cir. 1977) (holding that tomato packers were not engaged in secondary agriculture because they packed tomatoes grown by independent farms).

Plaintiff has alleged in her Amended Complaint that the fruits and vegetables that she used in her job were grown on other farms, not by Glaser.  [D.E. 11 at ¶¶ 15, 17] ("Defendant Glaser on a regular and continuing basis purchases agricultural produce from other growers to supplement his own produce and for use in his food processing operations").   Plaintiff alleged that fact in her Amended Complaint that produce from other farms was a "substantial portion" of what was used at Glaser. [D.E. 11 at ¶¶ 15, 17]  Plaintiff's allegations in this regard are fatal to her AWPA claim. As stated in *McComb* and *Marshall*, *supra*, the work that Plaintiff was doing with produce from other farmers was not "secondary agriculture."  There is no issue of fact that Plaintiff was working on commodities grown by other farmers.

Also, Plaintiff's job duties also were not "subordinate" to any farming operation at Glaser. Plaintiff testified at deposition that she was one of 43 kitchen workers employed by Glaser's kitchen facility.  [Exh. 1 at pg. 28–29].  Plaintiff alleges in the Amended Complaint that Glaser

9

employed a total of approximately 70 employees. [D.E. 11 at ¶ 16] Thus, more than half of the Glaser's employees were kitchen workers like Plaintiff. The kitchen facility where Plaintiff worked was not subordinate to any farming operation, it was actually Glaser's primary business and cannot be secondary agriculture as a matter of law. *See* 29 C.F.R. § 780.145 (noting that the size of the operations are relevant to the determination of whether a practice is secondary agriculture).

More importantly, Plaintiff was making avocados into guacamole, making fruits into juices, making salads, and ready-to-eat meals. She worked in a factory setting, not growing or harvesting crops. She was not packing raw produce for storage or shipment. She was making guacamole [Exh. 1 at pg. 19-20], making and mixing fruit juices [Exh. 1 at pg. 21–22], getting prepared foods ready for a retail farmers market [Exh. 1 at pg. 24–25, 29, 107, 108], washing dishes [Exh. 1 at pg. 24, 27, 29, 32, 69–71], mixing raw foods in mixing bowls [Exh. 1 at pg. 26–27], and creating "ready-to-go meals." [D.E. 11 at ¶ 10]. These activities are unquestionably outside of the definition of secondary agriculture. *See Centeno-Bernuy v. Becker Farms*, 564 F. Supp. 2d 166, 178 (N.Y.W.D. 2007) (stating that peeling apples later used to make apple pies for sale in a retail store was not secondary agriculture); *see also* 29 C.F.R. § 780.117(a) (stating that the making of apple cider is not agriculture).

Plaintiff was not working in "primary" or "secondary" agriculture as thus defined. Summary judgment should be granted for Glaser because Plaintiff was not employed in agriculture and is not, therefore, covered under the FLSA.

    **C.**    <u>**Plaintiff was not employed in "agricultural labor" under the Internal Revenue Code.**</u>

Plaintiff was also not employed in "agricultural labor" under the Internal Revenue Code ("IRC"), 26 U.S.C. § 3121(g). The definition of "agricultural labor" under the IRC is substantively similar to the definition of "agriculture" under the FLSA. The definition includes field work associated with growing and harvesting crops, as well as the management of a farm. 26 U.S.C. § 3121(g) (1)-(3). The definition of agricultural labor under the IRC "ha[s] been construed to mean traditional agricultural work performed on a farm." *Araiza-Calzada v. Webb's Seafood, Inc.*, 49 F. Supp. 3d 1001, 1004 (N.D. Fla. 2014) (citing *Morante-Navarro v. T & Y Pine Straw, Inc.*, 350 F.3d 1163 (11th Cir. 2003)).

Plaintiff was in no way employed in "agricultural labor" under the IRC. She was not performing any field work during her employment with Glaser. [Exh. 1 at pg. 29–30]. She was not involved in the management of the farm. And she was not performing any "traditional agricultural work on a farm." Plaintiff only worked in a manufacturing operation mixing and combining various agricultural commodities into "ready-to-go meals." [D.E. 11 at ¶10; Exh. 1 at pg. 19–25]. Plaintiff's activities clearly do not fit the definition of "agricultural labor" under the IRC.

    **D.**    <u>**Plaintiff was not "handling, planting, drying, packing, packaging, processing, freezing, or grading prior to delivery for storage of any agricultural or horticultural commodity in its unmanufactured state."**</u>

Plaintiff was not "handling, planting, drying, packing, packaging, processing, freezing, or grading prior to delivery for storage of any agricultural or horticultural commodity in its unmanufactured state" (i.e. the third definition of agricultural employment under the AWPA). 29

U.S.C. § 1802(3).  This definition encompasses activities performed on ***unmanufactured*** commodities before the ***unmanufactured*** commodities are stored.  *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 236 (7th Cir. 1983).  This definition does not apply to Plaintiff because she was not preparing or packaging unmanufactured commodities for storage.  She worked in a kitchen with dozens of other women *manufacturing* vegetarian food products, salads, cups of guacamole, single serving vegetarian meals.  She was making prepared foods for retail sale.  She was mixing various commodities to create new, manufactured food products.  [D.E. 11 at ¶10; Exh. 1 at pg. 19–25].

Plaintiff's work can easily be compared to an employee who, for example, is washing and grading tomatoes by size and color before putting them into a box for shipment to warehouse for storage.  The cases that have applied this definition of "agricultural employment" have applied the definition to the basic processing of unmanufactured commodities that can be considered an "aspect of agriculture."  *See, e.g.*, *Almendarez v. Barret-Fisher Co.*, 762 F.2d 1275, 1281 (5th Cir. 1985); *Chavez v. Riceland Foods, Inc.*, 475 F. Supp. 2d. 617 (W.D. Tex. 2007) (holding that the drying of rice was covered under the AWPA's third definition of agricultural employment); *Ramirez v. DeCoster*, 194 F.R.D. 348 (D. Maine 2000) (holding that egg processing was covered under the AWPA's third definition of agricultural employment).

There is no precedent for a manufacturing process that involves the mixing and combining of various spices, fruits, vegetables and juices into single serving meals, or prepared salads, or any of the other work that plaintiff was doing, as covered agricultural employment under the AWPA.  Plaintiff's work was no different than working in the kitchen of a vegetarian restaurant.  She was not loading or packing unmanufactured produce for storage.  She was making meals.  These

activities were far removed from agriculture as defined in the AWPA.  *See Morante-Navarro*, 350 F.3d at 1167–68 (the AWPA covers activities that are part of "agriculture").

In sum, Plaintiff was not employed in agricultural employment under the AWPA.  She was not employed in agriculture under the FLSA, IRC, and she was not "handling, planting, drying, packing, packaging, processing, freezing, or grading prior to delivery for storage of any agricultural or horticultural commodity in its unmanufactured state."  Because Plaintiff by her own admissions, and by her own pleading in the Amended Complaint, was not employed in agriculture, she was not working in employment covered by the AWPA and summary judgment should be granted for Glaser as to Count II of the Amended Complaint.

### 2. **Plaintiff Was Not A Migrant Agricultural Worker Because She Was Not Employed In Seasonal Or Temporary Employment.**

Even if Plaintiff had been employed in "agriculture" under the AWPA (which she was not), Plaintiff was not a migrant agricultural worker under the AWPA because she was not employed in seasonal or temporary employment.  29 U.S.C. §1802(8); *Caro-Galvan*, 993 F.2d at 1505.  "Seasonal" or "temporary" employment is employment which ordinarily "pertains to or is of the kind exclusively performed at certain seasons or periods of the year and which, from its nature, may not be continuous or carried on throughout the year."  29 C.F.R. § 500.20(s)(1).

Seasonal or temporary employment excludes the "employment of any worker who is living at his permanent place of residence, when that worker is employed by a specific agricultural employer or agricultural association on essentially a year round basis to perform a variety of tasks for his employer and is not primarily employed to do field work."  *Id.* § 500.20(s)(4); *Caro-Galvan*, 993 F.2d at 1508–09.  The "touchstone of seasonality is whether the employee is involved in field work."  *Caro-Galvan*, 993 F.2d at 1508.

The leading Eleventh Circuit case that addresses the issue of seasonality is *Caro-Galvan v. Richardson*, 993 F.2d 1500 (11th Cir. 1993). *Caro-Galvan* involved field workers who worked year-round for their employer, but they moved from one seasonal activity to another during the year. They harvested ferns from January through May. *Id.* at 1508. The rest of the year was a slack season in the fern harvesting, during which the field workers performed miscellaneous jobs. *Id.* Although the field workers were employed year-round, the Eleventh Circuit held that the field workers were seasonal workers. *Id.* at 1509. The court reasoned that there was a seasonal nature to their employment because there was a distinct slack season to the fern harvesting. *Id.* at 1508. The court also emphasized that the workers were performing work in a crop field, which is the "touchstone of seasonality." *Id.*

In the present case, Plaintiff was in no way a seasonal or temporary worker. Plaintiff had the type of job that the Court in *Caro-Galvan* (and the regulations) explicitly state is *not* seasonal or temporary. Plaintiff's job had nothing to do with working in a field of crops. Plaintiff lived at her home with her children and husband, and was employed year-round by Glaser. [Exh. 1 at pg. 29–30]. Even if Plaintiff was employed in agriculture (which she was not), she was not a seasonal worker because the AWPA regulations and *Caro-Galvan* state that seasonal or temporary employment excludes the "employment of any worker who is living at his permanent place of residence while employed by a specific agricultural employer or agricultural association on essentially a year round basis to perform a variety of tasks for his employer and is not primarily employed to do field work." 29 C.F.R. § 500.20(s)(4); *Caro-Galvan*, 993 F.2d at 1508–09. This precisely describes Plaintiff's job.

Plaintiff does not dispute that she was living at her permanent place of residence while she was employed by Glaser. The regulations define a permanent place of residence as a "domicile" or "permanent home." 29 C.F.R. § 500.20(p)(2). A "domicile" is a residence at a particular place with the intention to return. *Caro-Galvan*, 993 F.2d at 1509. The Supreme Court has also defined "domicile" as a "residence at a particular place accompanied with positive or presumptive proof of an intention to remain there for an unlimited time." *Mitchell v. United States*, 88 U.S. 350, 352 (1874); *see also Avalos v. La Conca D'Oro, Inc.*, 1988 U.S. Dist. LEXIS 14410, at 13 (E.D. Penn. 1988) (discussing the *Mitchell* definition of "domicile" in the context of the AWPA).

Plaintiff has lived at her current home address with her husband and children for the past six years. [Exh. 1 at pg. 7]. She has lived in the same community for nearly ten years, since November, 2007. [Exh. 2 at ¶¶ 1–2]. She lived at her current residence the entire time she was employed by Glaser. [Facts ¶ 15] She had no other residence, anywhere. [Exh. 1 at pg. 7]. She candidly admits that she has not even visited Guatemala for ten years. [Facts ¶ 10] There is no question of fact that she was living at her "domicile," her "permanent place of residence" at all times material to this lawsuit. Her current home is unquestionably her permanent place of residence. She testified that she has no other.

Additionally, Plaintiff was employed on a year-round basis. She worked for Glaser year round, from December, 2013, until she was terminated in December, 2014. [Exh. 1 at pg. 22–23]. Plaintiff was employed doing a variety of tasks. She testified at deposition that she performed a variety of tasks for Glaser, and that her tasks varied daily. [Exh. 1 at pg. 19] (her jobs in the kitchen "varied"); [Exh. 1 at pg. 69] ("the jobs varied"); [Exh. 1 at pg. 24] ("work was different each day").

BlueRock Legal, P.A. • 10800 Biscayne Boulevard, Suite 410, Miami, Florida 33161

Plaintiff worked for Glaser on a year-round basis performing a variety of tasks while living at her permanent place of residence. The idea that Plaintiff was a "migrant" worker is simply contrary to everything she has admitted in discovery. Summary judgment should be granted for Glaser because Plaintiff was not a "seasonal" or "temporary" worker.

### 3. Plaintiff Was Not A Migrant Agricultural Worker Because She Was Not Required To Be Absent Overnight From Her Permanent Place of Residence.

Even if Plaintiff had been employed in "agriculture" (which she was not), and even if she was employed on a "seasonal" or "temporary" basis (which she was not), Plaintiff is not a migrant agricultural worker under the AWPA because she was not required to be absent overnight from her permanent place of residence. *Caro-Galvan*, 993 F.2d at 1505. As previously stated, a "permanent place of residence" is a "domicile" or "permanent home." 29 C.F.R. § 500.20(p)(2). A "domicile" is a residence at a particular place with the intention to return or to remain. *Caro-Galvan*, 993 F.2d at 1509; *Mitchell*, 88 U.S. at 352.

Plaintiff lived at her permanent place of residence while she was employed by Glaser. Plaintiff has lived at her current home address for the past six years. [Exh. 1 at pg. 7]. She has lived in the same community for nearly ten years, since November, 2007. [Exh. 2 at ¶¶ 1–2]. She lived at this residence while she was employed by Glaser. She had no other residence, anywhere. [Exh. 1 at pg. 7]. She was living there with her family. It is difficult to imagine how Plaintiff can possibly claim that she was "migrating" for work.

Workers who can commute to their place of employment from their permanent place of residence are not migrants under the AWPA. *Cf. Soto v. McLean*, 20 F. Supp. 2d 901, 907 (E.D.N.C. 1998) (holding that workers who cannot commute from their permanent homes to their place of employment are migrants). Plaintiff has lived in either Homestead or Florida City since

16

2006.  [Exh. 2 at ¶¶ 1–2].   Plaintiff lived at her current home address during her entire employment with Glaser.  [Exh. 1 at pg. 30].

Even if Plaintiff had been employed in "agriculture," and even if she had been employed on a seasonal or temporary basis, she was not a "migrant worker" because she was never, during the year that she worked for Glaser or in any of the last ten years, been required to be absent overnight from her permanent place of residence.  She commuted to work.

## **CONCLUSION**

Plaintiff meets none of the criteria for a migrant agricultural worker under the AWPA.  Summary final judgment should be granted for Defendant as to Count II of the Amended Complaint.  Plaintiff has no claim under the AWPA because she was not a migrant agricultural worker under the AWPA.  For the foregoing reasons, we respectfully request that the Court grant summary judgment in favor of Defendant Glaser.

BLUEROCK LEGAL, P.A.
Counsel for Defendant
10800 Biscayne Boulevard, Suite 410
Miami, FL 33161
Phone:  (305) 981-4300
Fax:     (305) 981-4304
E-mail: fhenry@bluerocklegal.com
            dgonzalez@bluerocklegal.com


By:     /s/ Frank H Henry
      Frank H. Henry
      Florida Bar No. 956554
      Daniel E. Gonzalez
       Florida Bar No. 118696

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system sending a notice of electronic filing to counsel on the attached service list on May 19, 2016.

                                        /s/ Frank H. Henry
                                          Frank H. Henry

**SERVICE LIST**

Victoria Mesa
Florida Bar Number 076569
MESA AND COE LAW, P.A.
Compson Financial Center, Ste 205
1880 North Congress Avenue
Boynton Beach, FL 33426
Tel: (561) 880-8062
Fax: (561) 582-4884
Email: victoria@mesacoelaw.com
Co-Counsel for Plaintiff

Gregory S. Schell
Florida Bar Number 287199
Migrant Farmworker Justice Project
Florida Legal Services, Inc.
Post Office Box 32159
Palm Beach Gardens, Florida 33420
Tel: (561) 582-3921
Fax: (561) 582-4884
e-mail: greg@Floridalegal.Org
Co-Counsel for Plaintiff

Frank H. Henry (FBN 956554)
BLUEROCK LEGAL, P.A.
10800 Biscayne Boulevard, Suite 410
Miami, Florida  33161
Telephone: (305) 981-4300
Facsimile:  (305) 981-4304
Email:  fhenry@bluerocklegal.com
Counsel for Glaser

Daniel Gonzalez (FBN 118696)
BLUEROCK LEGAL, P.A.
10800 Biscayne Boulevard, Suite 410
Miami, Florida  33161
Telephone: (305) 981-4300
Facsimile:  (305) 981-4304
Email:  dgonzalez@bluerocklegal.com
Counsel for Glaser