UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Civil Action No. 1:15-cv-24224-KMW

| | |
|---|---|
| **DEBORA VELASQUEZ,** <br> **on behalf of herself and all others** <br> **similarly situated**, <br><br> Plaintiffs, <br> v. <br><br> **STANLEY M. GLASER,** <br> **d/b/a GLASER ORGANIC FARMS,** <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Stanley M. Glaser ("Glaser") has moved for summary judgment on Plaintiff's claims under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"). Glaser argues that the Plaintiff is not entitled to the Act's protections because she is not a migrant agricultural worker under the statute, her work was not agricultural employment under the statute, and her work was neither temporary nor seasonal in nature. This memorandum addresses each of these arguments.

## ARGUMENT

### During the period she worked for Glaser, Plaintiff Debora Velasquez was a migrant agricultural worker entitled to the protections of the AWPA.

Plaintiff Debora Velasquez formerly worked in the processing facility ("the kitchen") associated with his organic farming business.   In the kitchen, various raw materials are handled, packed and in some instances, combined to create pies, drinks, "rawies" (a form of raw fruit cookie) and other products sold to retail outlets, online customers as well as at the weekly Coconut Grove farmer's market.

Plaintiff Velasquez complains that she was not paid minimum and overtime wages as required by the Fair Labor Standards Act.   In addition, she alleges that Glaser failed to keep payroll records, issue wage statements and pay wages as required by the AWPA.

### I.   Plaintiff Velasquez's work with Glaser was "agricultural employment" within the meaning of the AWPA.

Glaser claims he is entitled to summary judgment because, *inter alia*, her work is not "agricultural employment" covered by the AWPA.   *See* Defendant's Motion for Partial Summary Judgment (Docket Entry 36) ("Def.'s Motion"), at 6-12.   Plaintiff's work fits squarely within the two prongs of the AWPA's definition of agricultural employment.

The AWPA provides three independent definitions of "agricultural employment." 29 U.S.C. § 1802(3). Workers may establish coverage under the AWPA by demonstrating that their work falls within any one of these three definitions of "agricultural employment:"

> the AWPA encompasses three possible definitions for agricultural employment: (1) employment within the provisions of section 3(f) of the [Fair Labor Standards Act], 29 U.S.C. § 203(f); (2) employment within the provisions of section 3121(g) of the Internal Revenue Code ("IRC"), 26 U.S.C. § 3121(g); and (3) "the handling, planting, drying,

packing, packaging, processing, freezing, or grading prior to delivery for storage of any agricultural or horticultural commodity in its unmanufactured state."

*Morante-Navarro v. T&Y Pine Straw, Inc.*, 350 F.3d 1163, 1167 (11th Cir. 2003) (quoting 29 U.S.C. § 1802(3)); *see also Bracamontes v. Weyerhauser Co.*, 840 F.2d 271, 273 (5th Cir. 1988) (discussing the three definitions of agricultural employment under AWPA); *Bresgal v. Brock*, 843 F.2d 1163, 1168 (9th Cir. 1988) (same).

### A. Velasquez's job duties work included cutting, slicing and packing raw, unaltered fruit into containers for storage for later retail sale.

Glaser's arguments rest in substantial part on his limited description of Velasquez's job duties.  Glaser himself acknowledges that he has no personal knowledge as to Velasquez's job duties other than she worked in the farm's "kitchen" and performed a number of different jobs. *See* Docket Entry 39-3, Deposition of Stanley M. Glaser, May 12, 2006 ("Glaser Depo."), at 232-234.   Instead, he relies on Velasquez's deposition testimony in the related Title VII case. *See* Docket Entry 37-1.

Because the Title VII does not turn on whether Velasquez was an agricultural worker under the AWPA, the questioning regarding her job duties in the deposition in that case was understandably abbreviated.   For example, at no point during the deposition was Velasquez asked for an exhaustive listing of the tasks she performed for Glaser.

Velasquez's accompanying affidavit (Docket Entry 39-1) provides a far more complete description of her job duties.   While Glaser's moving papers characterize the kitchen as a "food factory," limited to "mixing various commodities to create new, manufactured food products," Def.'s Motion, at 12, this is an incomplete description of the activities that took place in the Glaser farms kitchen.   Many of the raw materials handled in the kitchen were not mixed or chemically

altered in any fashion.   A number of the products by the kitchen staff are simply cut up, sliced and placed into clamshell containers or Ziploc bag for retail sale.   *See* Glaser Depo. (Docket Entry 39-2), at 84-85.

In addition to the guacamole preparation and juicing she described in her deposition, Velasquez worked cutting and slicing fruits into smaller pieces and placed them in smaller bags for sale, without adding to or altering the fruit's chemical structure.   Among the specific fruits she handled in this fashion were mangoes, coconuts, pineapples and guanabana.   *See* Declaration of Debora Velasquez (Docket Entry 39-1), at 2, ¶¶ 4 and 5.   Once placed in containers, the sliced fruit was stored until it was ready for sale at either Glaser's onsite retail market or at the Coconut Grove farmer's market.   *Id.*, ¶ 5.

### B.   Velasquez's work included secondary agriculture tasks under the FLSA.

Glaser correctly notes that secondary agriculture under the FLSA includes cleaning, drying, packing and storing of a farmer's agricultural commodities.   *See* Def.'s Motion, at 8-9, *citing* 29 C.F.R. § 780.151(b).   Velasquez and the other workers employed in the Glaser Organic Farms kitchen regularly engaged in each of these activities.[1]

Glaser freely admits that his farm sells a sizeable volume of dried fruits, and, among other duties, the kitchen staff assist in the drying process.   *See* Glaser Depo. (Docket Entries 39-2 and 39-3) at 37, 53, 76, 85, 217-18, 237-38.   The kitchen staff also cleans fruits and vegetables, *id.*, at

---

[1] In his motion, Glaser implies that Velasquez's alleges that *all* of the produce handled in the kitchen came from other farms, and therefore Velasquez could not have been in engaged in secondary agriculture under the FLSA.   *See* Def.'s Motion, at 9.   While she alleged that a portion of the fruits and vegetables she handled were grown on other farms, Velasquez never contended that all, or even most, of the produce came from outside sources.   Glaser himself admits that the outside purchases represent only a fraction of the produce handled in the kitchen.   *See* Glaser Depo. (Docket Entry 39-3), at 235 (the outside produce constitutes 10 to 30 percent of the raw materials handled in the kitchen).

- 4 -

55-56, 74.  The kitchen workers pack raw fruits, vegetables and nuts into containers for sale. *Id.*, at 84-85; Velasquez Declaration (Docket Entry 39-1), at 2, ¶¶ 4-5.   Finally, as part of their regular duties, the kitchen staff is expected to place the products they handle, including the raw, unaltered or dried fruit into Glaser's storage facility. *See* Glaser Depo. (Docket Entry 39-3), at 235; Velasquez Declaration (Docket Entry 39-1), at 2, ¶ 5.

### C.  Velasquez's work fell within the third prong of the AWPA's definition of agricultural employment.

Even if the Court was to conclude that her work did not constitute secondary agriculture under the FLSA, Plaintiff Velasquez is still protected by the Act because her job duties nonetheless fell within the AWPA's broad definition of "agricultural employment."

The AWPA's third definition of "agricultural employment" extends protection to any worker engaged in "handling, planting, drying, packing, packaging, processing, freezing, or grading prior to delivery of any agricultural or horticultural commodity in its unmanufactured state." 29 U.S.C. § 1802(3). The provision's legislative history makes clear that Congress deliberately intended to expand the definition of "agricultural employment" beyond that provided by the FLSA.   The provision, which had been included in the AWPA's predecessor statute, the Farm Labor Contractor Registration Act, expanded the statute's coverage beyond the limits of the Fair Labor Standards Act definition." *Bresgal*, 843 F.2d at 1168.   This was part of the AWPA's design to "encompass[] all activities covered by the FLCRA." *Morante-Navarro*, 350 F.3d. at 1169; *see also* H.R. Rep. 97-885, at 5 (1982), *reprinted in* 1982 U.S.C.C.A.N. 4551.

There is no question that all of the raw materials handled by Velasquez and the other kitchen workers were "agricultural commodities."   Likewise, Glaser concedes that virtually all of these raw products were "unmanufactured."   *See* Glaser Depo. (Docket WEntry 39-3) at 237

- 5 -

(conceding that all produce handled in the kitchen is unmanufactured except the products that have been dried).[2]

In trying to characterize the entirety of the activities in the kitchen as limited to creating new, manufactured food products, Def.'s Motion, at 12, Glaser ignores the work done by Velasquez and other kitchen workers simply cutting, slicing and packaging raw fruits and vegetables, as discussed in the prior section.  Those activities clearly involve handling unmanufactured commodities.

But even the work involving the combining of raw agricultural commodities into pies, drinks, salads and "rawies" falls within the third prong of AWPA's definition of "agricultural employment."  This was "processing" of agricultural commodities in an unmanufactured state, before they were placed in Glaser's cold storage units.  *See* Glaser Depo. (Docket Entries 39-2 and 39-3), at 65, 70, 73, 253 (discussing storage of guacamole, salsa, juices, pestos and other products).  The fact that the kitchen workers take these raw products and process and mix them into new products does not remove those activities from the AWPA.  The state of the raw food items *after* they are handled by the kitchen employees has no bearing on AWPA coverage.  Indeed, if a commodity must be raw or natural even *after* it is processed would render superfluous the term "processing" in 29 U.S.C. § 1802(3).  The reading urged by Glaser would exempt from AWPA coverage many of the processing workers AWPA was intended to cover and would be contrary to the Eleventh Circuit's admonition that the "AWPA is a remedial statute and should be construed broadly to effect its humanitarian purpose." *Caro-Galvan v. Curtis Richardson, Inc.*,

---

[2]This is contrary to the holding in *Chavez v. Riceland Foods, Inc.*, 475 F.Supp.2d 617 (W.D. Tex. 2007), relied on by Glaser in his brief, Def.'s Motion, at 12.  *Chavez* concluded that drying of commodities falls within the third prong of AWPA's definition of "agricultural employment."

993 F.2d 1500, 1505 (11th Cir.1993) (citing *Bracamontes*, 840 F.2d at 276.)

### D.   Velasquez's work was of a seasonal or temporary nature.

Glaser argues that even if she was engaged in agricultural employment within the meaning of the AWPA, Velasquez is nonetheless not entitled to the Act's protections because her work was not seasonal or temporary in nature.   The evidence, including Glaser's own statements, is to the contrary.

Glaser acknowledges that his business experiences seasonal swings in terms of demand. During the summer months, demand for his products declines, prompting some layoffs.[3]   In a letter written in July, 2015, Glaser wrote regarding one laid-off kitchen worker:

> Rosa Carbonel is no longer employed by Glaser Organic Farms as a
> farmworker. As of July 14th, 2015 Rosa Carbonel's services were
> no longer needed. She left in good standing with the company,
> however, due to a shortage in product ion needs and a lack of work
> available we can no longer offer work for her.

Deposition Exhibit 9 (Docket Entry 39-4); Glaser Depo. (Docket Entry 39-3), at 185 (acknowledging Rosa Carbonell was a kitchen worker, like Velasquez) and 229-230.

Glaser acknowledges that workers kitchen workers are also shifted to different activities throughout the year because of the unavailability of certain agricultural commodities during various times of the year.   *See* Glaser Depo. (Docket Entry 39-3), at 214-216 (describing raw products that are available only on a seasonal basis).   The Department of Labor's regulations implementing AWPA provide that such work is seasonal, noting that "[a] worker who moves from

---

[3] This is akin to the seasonal demand swings in the fern industry discussed by the Eleventh Circuit in *Caro-Galvan*.   Because most ferns are used in floral arrangements, demand for ferns peaks near holidays in which there is an increased demand for flowers, such as Mothers' Day and Valentine's Day. *Caro-Galvan*, 993 F.2d at 1502.

one seasonal activity to another, while employed in agriculture or agricultural labor, is employed on a seasonal basis even though he may continue to be employed during a major portion of the year." *See* 29 C.F.R. § 500.20(s)(1).

Glaser argues that Velasquez may not avail herself of the Labor Department regulation, because it does not include "any worker who is living at his permanent place of residence" and is employed to perform a variety of tasks for his employer and is not primarily employed to do field work. *See* Def.'s Mot., at 13, *citing* 20 C.F.R. 500.20(s)(4). Glaser stresses that Velasquez maintains a year-round residence in Homestead and has not visited her native Guatemala in many years. *Id.,* at 15.

Glaser errs in equating Velasquez's domicile in south Miami-Dade County with her permanent place of residence, as that term is defined in the AWPA. Plaintiff Velasquez is an undocumented alien, a nonimmigrant who has never been in possession of a visa allowing her to immigrate to or remain within the United States on a permanent basis. See Declaration of Debora Velasquez (Docket Entry 39-1), at 1, ¶ 2. The AWPA's regulations provide that "[t]he term *permanent place of residence* for any nonimmigrant alien is that person's country of origin." *See* 29 C.F.R. §500.20(p)(2) (original emphasis). As a nonimmigrant alien, by law, Velasquez's "permanent place of residence" is her native Guatemala for purposes of her AWPA claims.[4]

---

[4]The Eleventh Circuit has made clear that "permanent place of residence" is a term of art under the AWPA. Homes in a migrant labor camp in which fern workers had lived year-round for six years were nonetheless not the workers' permanent places of residence under the AWPA. *Caro-Galvan*, 993 F.2d at 1509.

- 8 -

## II. Plaintiff Velasquez was a migrant agricultural worker within the meaning of the AWPA.

Under the AWPA, a migrant worker is an individual employed in agricultural employment of a seasonal or temporary nature who is required to be absent overnight from her permanent place of residence. 29 U.S.C. § 1802(8)(A). As discussed above, Velasquez's work constituted agricultural employment under the AWPA, because *inter alia*, she worked "handling… drying, packing, packaging, processing … agricultural or horticultural commodit[ies] in [their] unmanufactured state." The work was seasonal in nature, reflecting fluctuations in market demand for Glaser's product and growing cycles that caused Velasquez and the other workers to move from job to job, depending on which produce was available at a given moment. The work was performed in south Miami-Dade County, far from Velasquez's native Guatemala, which, for purposes of the AWPA, was her permanent place of residence. 29 C.F.R. §500.20(p)(2).[5]

---

[5] It should have come as no surprise to Glaser that Velasquez is an unauthorized alien. She was never able to provide him with a Social Security number and "[a] person who is not a United States citizen or who is in the country illegally may not have a Social Security number." *U.S. v. Stangeland*, No. 08-CR-4043, 2009 WL 1371206 (N.D. Iowa, May 13, 2009) at *1. *See also*"Social Security Numbers for Noncitizens, Social Security Administration, available at https://www.ssa.gov/pubs/EN-05-10096.pdf ("Generally, only noncitizens authorized to work in the United States by the Department of Homeland Security (DHS) can get a Social Security number.") Velasquez's situation was not an isolated incidence. Glaser routinely hired workers without Social Security numbers. During the week of August 7, 2014, Glaser did not pay or deduct Social Security taxes on 22 of the 35 kitchen employees, including one of the two kitchen managers, because they were unable to furnish the company with a Social Security number. *See* Glaser Depo. (Docket Entry 39-3), at 141-143, 210.

## **CONCLUSION**

Glaser's motion fails for two reasons. First, disputed material issues of fact prevent entry of partial summary judgment. Contrary to Glaser's suggestion, Velasquez did not merely manufacture vegetarian food products and make prepared meals for retail sale. In fact, the unrebutted evidence is that Velasquez also simply cut and sliced raw fruits and placed them in containers for sale, work that constitutes secondary agriculture under the FLSA. Second, as a matter of law, Velasquez's work is agricultural employment under the third prong of the AWPA's definition of that term. Like the other kitchen workers, she handled and processed fruits and vegetables in their unmanufactured state, falling squarely within the statutory language of 29 U.S.C. § 1802(3). Her work was seasonal in nature, because she moved from task to task throughout the year, based in part on the availability of certain crops. Because she is a unauthorized alien and a nonimmigrant, Velasquez's permanent residence for purposes of the AWPA is her native Guatemala, rendering inapplicable the provisions of 29 C.F.R. § 500.20(s)(4).

Respectfully submitted,

*/s/ Gregory S. Schell*
Florida Bar Number 287199
Migrant Farmworker Justice Project
Post Office Box 32159
Palm Beach Gardens, Florida   33420
Telephone:	(561) 582-3921
Facsimile:	(561) 582-4884
e-mail: greg@Floridalegal.Org


Victoria Mesa
Florida Bar Number 076569
MESA-ESTRADA LAW, P.C.
Compson Financial Center, Suite 205
1880 North Congress Avenue
Boynton Beach, Florida   33426
Telephone:	(561) 880-8062
Facsimile:	(561) 582-4884
e-mail: victoria@mesacoelaw.com


*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system sending a notice of electronic filing to counsel on the following service list on this 12th day of June, 2016.

*/s/ Gregory S. Schell*
Gregory S. Schell

**SERVICE LIST**

Victoria Mesa
Mesa-Estrada Law, P.C.
Compson Financial Center, Suite 205
1880 North Congress Avenue
Boynton Beach, Florida   33426
Counsel for Plaintiff

Gregory S. Schell
Migrant Farmworker Justice Project
Florida Legal Services, Inc.
Post Office Box 32159
Palm Beach Gardens, Florida 33420
Counsel for Plaintiff

Frank H. Henry
BLUEROCK LEGAL, P.A.
Suite 410
10800 Biscayne Boulevard
Miami, Florida 33161
Counsel for Defendant